IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

DUARD E. BAUMGARDNER,

    Plaintiff,

V.                                        CIVIL ACTION NO. 3:05-0818

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

**FINDINGS AND RECOMMENDATION**

In this action, filed under the provisions of 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his application on May 27, 2003, alleging disability commencing February 15, 2001, as a consequence of kidney problems and hypertension. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, he filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was sixty years of age and had obtained a high school education. His past relevant employment experience consisted of work as

a machine operator in a steel factory. In his decision, the administrative law judge found that plaintiff suffered from "hypertension, chronic low back pain and intermittent kidney problems," impairments he considered severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined that he had the residual functional capacity for a limited range of medium level work. On the basis of this finding, and relying on Rules 203.15 and 203.07 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff has been treated primarily for hypertension that is very difficult to control and chronic renal insufficiency due to polycystic kidney disease. Although plaintiff alleged that back pain contributed to his disability, and the administrative law judge did find that this was a "severe" impairment, there is very little evidence relating to problems with back pain beyond medical reports which indicate that, at times, plaintiff may have experienced some symptoms of back pain related to his kidney disease.[3] During a consultative examination performed by Dr. Nutter on October 21, 2004, kyphosis of the dorsal spine and scoliosis were observed with limited range of motion; however, there was no tenderness in the spine, straight leg raising was negative, and plaintiff was neurologically intact. Further, forms plaintiff filled out at the time his application was filed indicate he was able to perform a number of activities, including housework and hobbies of

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404 Subpart P, Appendix 2, Table No. 3.

[3] At the hearing, plaintiff was asked what problems he had with his kidneys and he responded that sometimes his back aches.

hunting and fishing. On a "Personal Pain Questionnaire" when asked where his pain was located, plaintiff responded that there was "no pain." Treatment notes from the Veterans Administration Medical Center also reflect consistently that plaintiff rated his level of pain at zero, although he told the administrative law judge he experienced pain in the form of a dull ache on his right side. He indicated he was able to sleep well, walk one mile and sit for "a good while." Standing was alleged to have been limited, and plaintiff indicated he felt his lifting ability was only twenty pounds, but due to a history of a hernia, not pain. In light of these factors, it is clear that the administrative law judge's finding that plaintiff could perform medium level work requiring him to stand no more than six to seven hours per day, two to three at a one time, with limited pushing/pulling and only occasional climbing of stairs or stooping, is well-supported by the evidence.

With regard to high blood pressure and kidney disease, the evidence indicates there is some relationship between them. Medical reports reflect plaintiff's blood pressure has been difficult to control, and he testified at the hearing that his doctors had finally, within the previous six months, found the right combination of medications to bring it under control. It is noted that plaintiff's continued smoking and non-compliance with taking his medication at times were felt to contribute to the inability to keep his blood pressure under control. While plaintiff testified that his blood pressure medications made him tired and dizzy, there is no indication from the medical reports that these side effects were significant enough to prevent him from working or even for him to report them.[4] Further, the administrative law judge took this testimony into account when he determined

---

[4] One treatment note, from April 26, 2001, documented plaintiff's report that he felt tired and the diagnosis given was hypertension and "boredom."

that plaintiff's residual functional capacity was limited by an inability to work at heights or around dangerous machinery or to climb ladders or scaffolds.

A December 2002 report of a nephrology evaluation reflects a diagnosis of chronic renal insufficiency, slowly progressive, and the presence of renal cysts. It was noted that control of plaintiff's blood pressure was important in delaying the progression of the kidney disease. On March 6, 2003, plaintiff's doctor noted his blood pressure was "now well controlled." A report of a nephrology follow-up on April 29, 2003, reflects plaintiff was doing well. On May 12, 2003, he was without complaints, and at another nephrology follow-up visit on August 6, 2003, the chronic renal insufficiency was characterized as "stable."

Other than the April 26, 2001 office visit, it appears the only other time plaintiff complained that he was tired was to Dr. Nutter on October 21, 2004. He also reported dizziness at that time, but Dr. Nutter did not document anything abnormal with respect to these complaints. His impression was fatigue and dizziness. Nonetheless, he assessed plaintiff as being able to lift up to fifty pounds, thirty pounds occasionally and twenty-five pounds frequently with pushing/pulling limited to fifty pounds; stand and walk a total of seven to eight hours per day, two to three at a time; never climb ladders and scaffolds or balance; no work at heights; and, only occasional climbing stairs and stooping. With the exception of those from the state agency medical advisors, this was the only assessment of residual functional capacity in the record. After reviewing the evidence, the administrative law judge concluded it was the most consistent and adopted it, although he added that plaintiff also should not work in temperature extremes. Given the medical reports and the plaintiff's assertions that he was not restricted in his ability to perform household chores, drive, shop, visit

friends or engage in hunting and fishing, the Court concludes the administrative law judge's findings are supported by the evidence.

While plaintiff alleged some pain due to his kidney and/or back conditions, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that his testimony was not "totally credible." He noted plaintiff's testimony concerning the activities he was able to perform as well as the severity of his impairments as revealed in the medical reports. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning, both at the hearing and through post-hearing interrogatories, which included plaintiff's age, education, work experience and a reasonably accurate profile of his functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of medium, light and sedentary jobs in the national economy which he could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

**RECOMMENDATION**

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: May 9, 2007

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE